UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LINDA SCHIELE,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

07-CV-759
(FJS/VEB)

---

## I. INTRODUCTION

In November of 2004, Plaintiff Linda Schiele filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since November 13, 1996, primarily due to diabetes, arthritis, and cardiac issues. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, represented by Peter M. Margolius, Esq., commenced this action on July 23, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision. This Court further finds that a remand

is not warranted based upon new evidence provided by the Plaintiff.  Thus, this Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff applied for DIB on November 17, 2004, alleging that she had been unable to work since November 13, 1996. ($T^1$ at 28-30).  The application was denied on January 12, 2005. (T at 8).  Plaintiff filed a request for a hearing on February 14, 2005.  (T at 20).  On April 28, 2006, a hearing before Administrative Law Judge ("ALJ") Carl Stephan was held in Albany, New York. (T at 124).   Plaintiff, represented by counsel, appeared and testified.  (T at 8, 124).

On June 21, 2006, ALJ Stephan issued a written decision denying Plaintiff's application for benefits.  (T at 8-13).  The ALJ's decision became the Commissioner's decision on May 25, 2007, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 2-5).

Plaintiff commenced this action on July 23, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on May 5, 2008. (Docket No.8).  The Commissioner filed a Brief in opposition on July 17, 2008. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No.5)

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ concluded that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2001. (T at 10). He also concluded that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. (T at 10). The ALJ found that Plaintiff has the following "severe" impairments: diabetes, arthritis, and hardening of the arteries. (T at 10). However, the ALJ concluded that, as of the date last insured, Plaintiff's impairments did not meet or equal the level of severity of any disabling

5

condition set forth in Appendix 1 of the applicable Social Security Act Regulations (the "Regulations").  (T at 11).

After reviewing the medical evidence, the ALJ concluded that, through the date last insured, Plaintiff had the residual functional capacity to "lift or carry up to 25 pounds frequently or 50 pounds occasionally and sit, stand, or walk without restriction." (T at 11).

The ALJ concluded that, as of the date last insured, Plaintiff could return to her past relevant work as a cashier.  (T at 12).  The ALJ found that given Plaintiff's residual functional capacity, she could perform "sedentary, light and medium work" during the relevant time period  (T at 12).  Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined under the Act, at any time through December 31, 2001, the date last insured.  (T at 12).

As noted above, the ALJ's decision became the Commissioner's final decision on May 25, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 2-5).

### 2. Plaintiff's Claims

To be eligible for DIB, a claimant must be "insured for disability benefits." 42 U.S.C. §§ 423(a) (1)(A), 423(c)(1).  An applicant's "insured status" is generally dependent upon a ratio of accumulated "quarters of coverage" to total quarters. Id. at § 423(c)(1)(B). "Quarters of coverage" include quarters in which the applicant earned certain amounts of wages or self-employment income. 20 C.F.R. §§ 404.101(b), 404.140-404.146; see also Arnone v. Bowen, 882 F.2d 34, 37 (1989); Batchelder v. Comm'r of Social Sec., 07-CV-00354, 2009 WL 1559815, at *7 (N.D.N.Y. June 3, 2009).

In this case, as noted above, the ALJ concluded that Plaintiff last met the "insured status" requirements on December 31, 2001. (T at 10). Plaintiff does not contest the ALJ's determination in this regard. After reviewing the medical evidence placed into the record, the ALJ found Plaintiff's testimony about her medical condition and limitations "prior to December 2001 to be unsupported by the medical evidence and not credible." (T at 11). In particular, the ALJ noted that, notwithstanding his own efforts and the efforts of Plaintiff's counsel, there appeared to be no "treatment evidence from before [Plaintiff's] date last insured." (T at 11).

Further, the "later evidence that refer[red] back to that time [did] not indicate any problems serious enough to produce the limitations [Plaintiff] complains of having had at the time." (T at 11). In sum, the ALJ concluded that the "minimal evidence in the record prior to [Plaintiff's] date last insured does not support her allegations." (T at 12).

Plaintiff does not challenge the ALJ's findings. Rather, she argues that a remand is warranted because new evidence regarding her medical condition during the period prior to December 31, 2001, shows that she was disabled during that period. In support of this argument, Plaintiff points to two new pieces of evidence. This Court will address each item in turn.

        **a.**    **Supplemental Letter from Dr. Keukjian**

On October 23, 2006, approximately four months after the ALJ issued his decision, Dr. Vahe Keukjian, Plaintiff's treating physician, provided Plaintiff's counsel with a letter in which the doctor noted that Plaintiff "has had adult-onset diabetes mellitus since at least the mid-to-late 1990s." (T at 123). Dr. Keukjian offered that Plaintiff's "records indicate that, certainly by 2000, she had begun to show signs of end-organ damage from diabetes,

7

including Dupuytren's contractures, carpal tunnel syndrome, paresthesias of the feet, and other endocrine disorders, such as dyslipidemia . . . " (T at 123).  Dr. Keukjian concluded by opining that Plaintiff's "current limitations have been brewing for a long time." (T at 123).

Plaintiff's counsel submitted this letter to the Appeals Council. (T at 121).  The Appeals Council considered Dr. Keukjian's supplemental letter (T at 5), but concluded that the information contained therein "[did] not provide a basis for changing the Administrative Law Judge's decision." (T at 3).  Plaintiff argues that the Appeals Council erred because the supplemental letter contradicts the ALJ's residual functional capacity assessment.  In particular, Plaintiff contends that the ALJ would have evaluated her credibility differently if he had the benefit of Dr. Keukjian's supplemental letter.

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "

Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000)

8

(concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

This Court concludes that the Appeals Council did not err when it declined to remand the ALJ's decision based on Dr. Keukjian's supplemental letter. There is no indication that Dr. Keukjian treated Plaintiff at anytime during the relevant period. Rather, it appears that Plaintiff began treating with Dr. Keukjian in late 2003. (T at 77-79). The supplemental letter at issue was written nearly five years after the date last insured. Dr. Keukjian did not provide any medical or laboratory tests or documentation tending to confirm or support his assessment regarding Plaintiff's limitations during a period that apparently pre-dated their treating relationship.

In the ALJ's decision, he afforded Dr. Keukjian's opinion controlling weight "in assessing the claimant's condition as of April 5, 2005, but little or no weight in assessing the claimant's condition as of December 31, 2001." (T at 12). There is nothing in the supplemental letter than in any way materially undermines or calls into question the ALJ's assessment in this regard. Plaintiff's claim of disability remains fundamentally flawed in that it is unsupported by contemporaneous, credible evidence of disability prior to the date last insured. Dr. Keukjian's completely conclusory and highly speculative suggestion regarding a period that apparently pre-dated his treating relationship was insufficient to counterbalance the weight of the evidence (or lack thereof) contained in the record before the ALJ. As such, the Court finds no error in the Appeals Council's decision not to remand on this basis.

### b. Letter from Co-Worker

Plaintiff also argues that a remand is appropriate due to the information set forth in

a letter signed by Rita Bates-Murphy dated February 18, 2008. In the letter, which was appended to Plaintiff's Brief (Docket No. 8), Ms. Bates-Murphy explains that she was the store manager at a Cumberland Farms store in Hunter, New York from 1985 to 1998. Ms. Bates-Murphy states that Plaintiff was an employee at the store from sometime in 1986 until November 13, 1996. According to Ms. Bates-Murphy, it was "obvious" that Plaintiff's "health was declining and it became difficult for her to walk or stand." She noted that Plaintiff frequently dropped objects and exhibited diminished concentration. Ms. Bates-Murphy states that Plaintiff's pain reduced her to tears and that, in her opinion, Plaintiff only worked to maintain her health insurance, although she was ultimately forced to leave her employment due to pain in November of 1996.

Plaintiff contends that a remand is warranted because Ms. Bates-Murphy's letter provides new and material evidence regarding Plaintiff's condition prior to the date last insured.

The Social Security Act provides that a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. See 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

This type of remand, commonly referred to as a "sentence six remand," is only appropriate if new, non-cumulative evidence presented to the District Court should be considered by the Commissioner *and* if the claimant can establish good cause for having failed to present the evidence during the original administrative proceedings. See Lisa v.

Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991).

In the Second Circuit, courts employ a three-prong test to determine whether a sentence six remand is warranted. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988). First, the evidence must be "new" and not merely cumulative of evidence in the administrative record. Id. (citing Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir.1984)). Second, the new evidence must be "material," *i.e.* "it must be relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975)). The "materiality" prong further requires a finding that there is a reasonable possibility that the new evidence would have changed the outcome before the Commissioner. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991). Third and finally, the plaintiff must demonstrate good cause for failing to present the evidence earlier. Lisa, 940 F.2d at 43.

In this case, Ms. Bates-Murphy's letter is new and not merely cumulative of evidence in the record.  However, there is no reasonable possibility that the Commissioner would have reached a different conclusion based upon Ms. Bates-Murphy's letter, which is unsworn[3] and based entirely upon her lay opinion.  Even if Ms. Bates-Murphy had been called as a witness and testified consistent with her letter, it is doubtful that the Commissioner would have found this sufficient to establish disability in light of absence of credible medical evidence relative to the period in question.

Lastly, even assuming *arguendo* that Ms. Bates-Murphy's letter was new and material evidence, Plaintiff's argument must fail because she cannot satisfy the "good

---

[3]Although Ms. Bates-Murphy's signature was notarized, the letter is unsworn.

cause" requirement for a sentence six remand.

"'Good cause'" for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." Lisa, 940 F.2d at 43 (noting that sentence six of § 405 (g) provides that "[t]he court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding....")(emphasis original).

In this case, Plaintiff has not made any attempt to satisfy the good cause standard. Ms. Bates-Murphy's letter deals with events that occurred more than a decade before the Commissioner's final decision was rendered on May 25, 2007. Moreover, the letter is dated February 18, 2008, which was nearly seven (7) months after Plaintiff filed this action. Indeed, the letter was filed with Plaintiff's Brief in May 2008, almost ten (10) months after this case was filed and nearly a year after the Commissioner's final decision.

Plaintiff, who was represented by counsel at the administrative level, has offered no excuse that might even arguably constitute good cause for failing to present this evidence during the administrative proceedings. It certainly appears that the matters set forth in Ms. Bates-Murphy's letter could have been obtained and presented during the administrative proceedings. By no means can it be said that this evidence "surfaced" after the Commissioner's final decision or that Plaintiff had good cause for failing to incorporate it into the record in the first instance. See Lisa, 940 F.2d at 43. Accordingly, Plaintiff's request for a sentence six remand should be denied on that basis. See Kiley v. Astrue, No. 07-CV-6617, 2009 WL 1956173, at *8 (W.D.N.Y. July 6, 2009) (denying request for

sentence six remand because plaintiff "failed to explain why [the] evidence, which relates to the time period from 2002 to 2005, was not produced until 2009 – well after her administrative proceedings had concluded"); Quinones v. Chater, No. 94-CIV-6249, 1996 WL 39301, at *3 (Jan. 31, 1996) (rejecting request for sentence six remand because evidence could have been obtained during pendency of administrative proceedings).

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that a judgment be entered to that effect.

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

Dated:  July 23 , 2009

    Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 23, 2009

_____
Victor E. Bianchini
United States Magistrate Judge